UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED FIRE & CASUALTY COMPANY, | |
| Plaintiff, | |
| v. | Case No. 11-cv-470-JPG-PMF |
| THIEMS CONSTRUCTION COMPANY, INC., ALLIED WASTE TRANSPORTATION, INC., and JAMES C. FOWLER, | |
| Defendants, | |
| and | |
| ROXANA LANDFILL, INC., | |
| Defendant/Third-Party Plaintiff | |
| v. | |
| TERRY THIEMS and TAD THIEMS, | |
| Third-Party Defendants. | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on a variety of motions:

- Defendant/third-party plaintiff Roxana Landfill, Inc.'s ("Roxana") motion for summary judgment (Doc. 55), to which plaintiff United Fire & Casualty Company ("United Fire") has responded (Docs. 63 & 64);

- United Fire's motion for partial summary judgment (Doc. 74), to which Roxana and defendant Allied Waste Transportation, Inc. ("Allied Waste") have responded (Doc. 90);

- Roxana's motion for partial summary judgment (Docs. 77 & 78), to which United Fire has responded (Docs. 80 & 82);

- United Fire's motion to strike Roxana's second motion for summary judgment (Doc. 79), to which Roxana has responded (Doc. 92); and

- Third-party defendant Terry Thiems ("Terry") and Tad Thiems' ("Tad") motion to dismiss or, in the alternative, to stay (Doc. 93), to which Roxana has responded (Doc.

96).

The summary judgment motions overlap substantially in their arguments, so the Court will consider them all together.

**I.      Background**

In this suit, United Fire seeks a declaration that a commercial general liability insurance policy ("Policy"; Doc. 59-1 to -4, Page ID # 560-634) it issued to defendant Thiems Construction Company, Inc. ("Thiems Inc.") (CGL Policy No. 60057489) does not cover Roxana or Allied Waste as additional insured parties for claims brought against them in underlying state court litigation by defendant James C. Fowler – *Fowler v. Thiems*, No. 09-L-922 (Cir. Ct. Mad. Co.).  Fowler filed that case against Roxana, Allied Waste, Thiems Inc., and two officers of Thiems Inc. – Terry and Tad.  Roxana tendered its defense in the *Fowler* action to United Fire claiming it was an additional insured under the Policy, and United Fire accepted but reserved the right to deny coverage for a variety of reasons.  It now seeks to deny coverage to Roxana and Allied Waste.

A.      Allegations in Underlying Suit

In the underlying action, Fowler alleges the following.  Fowler, individually and as trustee for a trust, owns property in Edwardsville, Illinois, on which he has his home.  Thiems Inc., Terry and Tad (collectively, "the Thiems defendants") operated a business on property adjacent to and immediately south of Fowler's property.  Roxana and Allied Waste operated a landfill on property that was immediately south of the Thiems defendants' property.

At some time before 2008, Roxana entered into a real estate purchase and construction agreement ("Purchase and Construction Agreement") with Terry and Tad, who owned the property on which the Thiems defendants conducted their business operations.  Pursuant to the

Purchase and Construction Agreement, Terry and Tad would make improvements requested by Roxana on land they owned, and then they would sell the improved land to Roxana. The Purchase and Construction Agreement also provided that Terry and Tad "shall maintain comprehensive general liability coverage in the amount of $1 million per occurrence." Purchase and Construction Agreement, ¶ 7 (Doc. 56-1; Page ID # 519).

Beginning in April 2009, the Thiems defendants graded and made improvements on their property that unreasonably increased the natural run-off of water from their property to Fowler's property. Roxana and Allied Waste also graded their property such that it increased the natural water flow from their property, across the Thiems defendants' property, and onto Fowler's property. The increased run-off volume and velocity caused water, mud and debris to flow into Fowler's buildings and swimming pool, decreased his property value and prevented him, and continues to prevent him, from enjoying his property. Later, pursuant to the Purchase and Construction Agreement, Roxana purchased from Terry and Tad a part of the Thiems defendants' property that was adjacent to Fowler's property knowing the Thiems defendants had caused the offensive run-off.

In addition to the run-off problem, Fowler complains that vehicles from Roxana and Allied Waste's landfill track mud and debris on the road in front of Fowler's house. After the mud dries, it becomes airborne and pollutes the air by Fowler's home with dust and toxic substances. Debris also creates a road hazard. Roxanna and Allied Waste also fail to cover deposits in the landfill, which causes a stench that pervades Fowler's property. All this prevents Fowler from enjoying his property.

Fowler brings claims against the Thiems defendants for trespass (Count I), negligence (Count II) and injunctive relief to restore the prior run-off level (Counts III, IV, V and VI). He

sues Roxana and Allied Waste for trespass because of the increased run-off (Count VII and VIII) and nuisance because of the smell and the tracked mud and debris (Count X). Against Roxana alone, he seeks injunctive relief forcing it to restore the prior run-off level (Count IX). He sues the Thiems defendants and Roxana for intentional infliction of emotional distress (Count XI) and brings a separate intentional infliction of emotional distress against the Thiems defendants (Count XII) based on the run-off. He also sues Allied Waste for intentional infliction of emotional distress based on the run-off and on the mud and debris tracked from the landfill (Count XIII). Fowler brings Count XIV against Roxana but the exact nature of the cause of action is unclear.

This lawsuit by United Fire relates only to potential coverage for the claims against Roxana and Allied Waste: Counts VII-XI, XIII and XIV. It claims that Roxana and Allied Waste are not additional insureds such that they are covered by the Policy. Roxana, in turn, has filed a third-party complaint against Terry and Tad based on their failure to provide insurance to Roxana as promised (in the event United Fire prevails on its declaratory judgment action).

B.   Policy

1.   Named Insureds

In deciding whether Roxana and Allied Waste are additional insureds under the Policy, a review of the Policy is a good place to start. As noted above, the Policy was issued to Thiems Inc. In the Policy declarations, the "Named Insured" lists "Thiems Construction Co Inc" and "See SPECEND." *See* Policy, Commercial General Liability Coverage Part (Doc. 59-1, Page ID # 562). Several pages later, an endorsement labeled "SPEC END" lists additional "Named Insureds" as Thiems Excavating Inc., Thiems Trucking Inc., Fox Creek Estates Inc. and Fox Creek Land Trust. *See* Policy, Endorsement (Doc. 59-1, Page ID # 571). The Policy also states

4

that when it uses the terms "you" and "your," it refers to the "Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." Policy, Commercial General Liability Coverage Form at 1 (Doc. 59-1, Page ID # 572). The Policy uses the simple term "insured," as distinct from "Named Insured," to refer to anyone else covered by the Policy. *Id.* Of the "Named Insureds" listed in the Policy, only Thiems Inc. is relevant to this litigation. To facilitate understanding the Policy, the Court will substitute "Thiems Inc." as appropriate whenever the terms "Named Insured" or "you" appear in the relevant provisions.

2.      Additional Insureds

The Policy also covers other entities that are not "Named Insureds." For example, it covers employees of Thiems Inc. (other than its executive officers) with respect to their duties within the scope of their employment. *See* Policy, Commercial General Liability Coverage Form at 10 (Doc. 59-1, Page ID # 581). "Executive officers" are holders of any of the offices created by the corporation's governing documents. Policy, Commercial General Liability Coverage Form at 14 (Doc. 59-1, Page ID # 585)

The Policy also extends coverage under an Ultra Liability Plus Endorsement, which states, in pertinent part:

5.      **Additional Insured – Owners, Lessees or Contractors – Automatic Status Required in Construction Agreement with [Thiems Inc.]**

a.      Any person or organization for whom [Thiems Inc. is] performing operations *when [Thiems Inc.] and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on [Thiems Inc.'s] policy. . . .*

Policy, Ultra Liability Plus Endorsement at 8 (emphasis added) (Doc. 59-3, Page ID # 603).

5

It also extends coverage under a Contractors Blanket Additional Insured – Limited

Products – Complete Operations Coverage Endorsement ("Contractors Blanket Endorsement"),

which states additional insureds include:

> any person or organization *whom [Thiems Inc. is] required to add as an additional insured on this policy under a written contract or written agreement* . . . 1.  Currently in effect or becoming effective during the term of this policy; and 2.  Executed prior to the "bodily injury" or "property damage".

Policy, Contractors Blanket Endorsement at 1 (emphasis added) (Doc. 59-4, Page ID # 619).

## II.    Summary Judgment Motions

Summary judgment must be granted "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a);  *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);  *Spath v. Hayes Wheels

Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000).  The reviewing court must construe the

evidence in the light most favorable to the nonmoving party and draw all reasonable inferences

in favor of that party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986);  *Chelios v.

Heavener*, 520 F.3d 678, 685 (7th Cir. 2008);  *Spath*, 211 F.3d at 396.

The threshold question in this dispute is whether Roxana and Allied Waste are additional

insureds under the Policy.  In its various filings, United Fire argues that neither Roxana nor

Allied Waste is a Named Insured because neither has a written contract with Thiems Inc. (or any

other Named Insured) such that it is covered as an additional insured under the Ultra Liability

Plus Endorsement or the Contractors Blanket Endorsement.  It notes that the Purchase and

Construction Agreement is between Roxana, on the one side, and Terry and Tad, on the other,

but that Terry and Tad are not Named Insureds under the Policy.  Therefore, it argues, the

Purchase and Construction Agreement is not the type of contract that would render a contracting

6

party an additional insured under the Ultra Liability Plus Endorsement or the Contractors Blanket Endorsement.

Roxana first argues that the Purchase and Construction Agreement is sufficient to render it an additional insured under the Ultra Liability Plus Endorsement or the Contractors Blanket Endorsement.  This argument ignores any distinction between Thiems Inc. and Terry or Tad, referring to them collectively as "contractor Thiems."  Roxana further fails to explain why a contract signed by Terry and Tad should be viewed as a contract with Thiems Inc.

Roxana next argues that a written Agreement for Professional Contracting Services ("Contracting Agreement") executed by Terry and Tad, on the one side, and Roxana, on the other is a basis for finding it an additional insured.  The Contracting Agreement is an exhibit to the Purchase and Construction Agreement.  Roxana argues that Tad, a vice president and employee equipment operator for Thiems Inc., is an insured under the Policy because he is an employee of Thiems Inc., a Named Insured, and because Fowler's claims are based on grading and improvement work Tad performed for Thiems Inc.  Roxana believes that the Contracting Agreement, which required Terry and Tad to add Roxana as an additional insured on their comprehensive general liability insurance policy, *see* Contracting Agreement, ¶ 3.6 (Doc. 56-1, Page ID # 532), rendered Roxana an additional insured under the Ultra Liability Plus Endorsement and the Contractors Blanket Endorsement.

Finally, Roxana maintains Terry and Tad signed the Contracting Agreement on behalf of Thiems Inc., which is the entity that performed the contracting services contemplated by the Contracting Agreement.  Consequently, in its view, the Contracting Agreement that obligates the contractor to add Roxana as an additional insured to its comprehensive general liability insurance policy makes Roxana an additional insured under the Policy.

7

In reply, United Fire argues that Tad's status as an additional insured in his own right does not authorize him to make contracts in his own name that purport to create additional insurance coverage for third parties.  It notes the Policy endorsements speak of written contracts with the Named Insured, Thiems Inc., not with additional insureds.

A.   <u>Applicable Law</u>

Both parties agree that Illinois law applies to this case.  Under Illinois law, interpretation of an insurance policy is question of law.  *River v. Commercial Life Ins. Co.*, 160 F.3d 1164, 1169 (7th Cir. 1998);  *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1077 (Ill. 1993).  In interpreting a policy, the Court must attempt to effectuate the parties' intention as expressed by the policy, giving "due regard to the risk undertaken, the subject matter that is insured, and the purposes of the entire contract."  *Id.* (quotations omitted);  *accord Allen v. Transamerica Ins. Co.*, 128 F.3d 462, 466 (7th Cir. 1997);  *Crum & Forster*, 620 F.3d at 1078.  If the policy is unambiguous, the Court must construe it according to the plain and ordinary meaning of its terms.  *River*, 160 F.3d at 1169;  *Allen*, 128 F.3d at 446;  *Crum & Forster*, 620 F.3d at 1078.  On the other hand, if the policy is ambiguous, the Court must construe all ambiguities in favor of the insured and against the insurer, who drafted the policy.  *River*, 160 F.3d at 1169;  *Allen*, 128 F.3d at 446;  *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212 (Ill. 1992).  To determine if an ambiguity exists, the Court must ask whether the policy, taken as a whole and reading all parts in light of the other parts, is susceptible to more than one reasonable interpretation.  *River*, 160 F.3d at 1169;  *Allen*, 128 F.3d at 446;  *Outboard Marine*, 607 N.E.2d at 1212.  The parties' mere disagreement about the interpretation of a policy does not render it ambiguous.  *River*, 160 F.3d at 1169.  Using these standards, the Court must interpret the Ultra Liability Plus Endorsement and the Contractors Blanket Endorsement to see

whether they provide coverage to Roxana or Allied Waste.

      B.    <u>Analysis</u>

As a preliminary matter, Roxana and Allied Waste's filings do not argue that Allied Waste is covered by the Policy.  In fact, there is no suggestion anywhere in the briefing that Allied Waste is a Named Insured or that it has any written agreement with Thiems Inc. (or with anyone else) such that a reasonable jury could find it is covered by the Policy either as a Named Insured or an additional insured.  The Court will accordingly grant United Fire's motion for partial summary judgment (Doc. 74) on Count I, which relates to its duty to defend and indemnify Allied Waste for Fowler's claims.

As to Roxana, the question is more complicated.  No party disputes that Thiems Inc. is the relevant Named Insured in this case and that if Thiems Inc. had entered into a written contract that required it to add Roxana as an additional insured under the Policy, Roxana would be an additional insured.[1]  There is also no real dispute that if Tad is an employee of Thiems Inc. – the Court assumes he is for the purposes of this motion – he is an additional insured under the Policy for acts within the scope of his employment.  The critical questions in dispute are (1) whether Tad, as an additional insured, can contract to provide coverage under the Policy for Roxana and (2) whether Thiems Inc. is a party to the Construction Agreement.

Under the plain language of the Policy, Roxana is not an additional insured under the Ultra Liability Plus Endorsement or the Contractors Blanket Endorsement by virtue of its contract with Tad.  Under both endorsements, to be considered an additional insured, an entity

_____

    [1]The Court understands that United Fire would still contest whether conditions triggering the coverage of an additional insured have been satisfied.  However, the Court need not address those arguments at this time.

must have a written contract with "you" as that term is defined in the Policy.  "You" means "the Named Insured," and the only relevant "Named Insured" is Thiems Inc.  The Policy was careful to distinguish "Named Insureds" (like Thiems Inc.) from other "insureds" (like Tad), and to refer only to the "Named Insured" in the relevant endorsements.  If the Court were to read "Named Insured" and "insured" to mean the same thing, it would nullify the special meaning of the "Named Insured" as the party directly contracting with the insurer and would create additional obligations for United Fire beyond those it expressly promised to the "Named Insureds."  Courts will not interpret a contract to nullify some of its provisions or to contradict the plain and obvious meaning of its language.  *See Fid. Nat'l Title Ins. Co. of N.Y. v. Westhaven Props. P'ship*, 898 N.E.2d 1051, 1063-64 (Ill. App. Ct. 2007).  Here, if United Fire had intended to cover those contracting with additional insureds like Tad under the Ultra Liability Plus Endorsement and the Contractors Blanket Endorsement, it would have used the term "insured" and not the phrase "Named Insured" in those endorsements.  It did not do so.  The Policy unambiguously does not extend coverage under the Ultra Liability Plus Endorsement and the Contractors Blanket Endorsement as broadly as Roxana argues.

The key question then becomes whether the Contracting Agreement signed by Terry and Tad was really a contract with Thiems Inc.  If the contract was ambiguous as to its parties, there is a genuine issue of material fact and a jury must decide whether Roxana contracted with Thiems Inc.  If it is unambiguous, there is no contract between Roxana and Thiems Inc. and, for the reasons explained above, no coverage under the Policy.[2]

Under Illinois law, "When an officer signs a document and indicates next to his signature

---

[2]Roxana does not argue that Terry and/or Tad are the alter egos of Thiems Inc. Therefore, they have waived any defense based on that theory.

his corporate affiliation, then absent evidence of contrary intent in the document, the officer is not personally bound." *Wottowa Ins. Agency, Inc. v. Bock*, 472 N.E.2d 411, 413 (Ill. 1984); *accord Sullivan v. Cox*, 78 F.3d 322, (7th Cir. 1996).  The converse is also true.  "An officer who signs his name, without more, is individually liable on the contract."  *84 Lumber Co. v. Denni Constr. Co.*, 571 N.E.2d 231, 233 (Ill. App. Ct. 1991) (citing *Zella Wahnon & Assocs. v. Bassman*, 398 N.E.2d 968 (Ill. App. Ct. 1979) (owner liable in personal capacity for contract that did not mention corporate entity and was signed without indicating representative capacity); *see also Carollo v. Irwin*, 959 N.E.2d 77, 91 (Ill. App. Ct. 2011) (stating "where an agent signs [a] contract in his own name and the contract nowhere mentions the existence of agency or the identity of the principal, the agent is personally liable.").  Thus, if no contrary intent is reflected in the document, an individual's signature without any indication he is signing in his corporate capacity binds the individual, not the corporation.

In this case, the Contracting Agreement unambiguously reflects a clear intent to bind Terry and Tad in their personal capacities but not Thiems Inc.  As in *Zella Wahnon*, the contract does not mention the corporate entity at all and is signed by individuals without reference to their corporate representative capacity.  Additionally, the heading of the Contracting Agreement listed the contracting parties as Terry and Tad, not Thiems Inc.  Furthermore, the Contracting Agreement was an exhibit to the Purchase and Construction Agreement, which was clearly between Roxana and Terry and Tad in their personal capacities.  That agreement obligated them personally make improvements on and then to sell land they, as individuals, owned.  While it is possible that Thiems Inc. may have ultimately performed the contracting services contemplated by the Contracting Agreement, nowhere does the document obligate Thiems Inc. to do so or even expressly contemplate that it do so.  There is simply no evidence to create any ambiguity in

11

the Contracting Agreement about the parties it binds:  Roxana, Terry and Tad.  Thus, as a matter of law, it is not a contract with Thiems Inc. and cannot give rise to additional insured status under the Ultra Liability Plus Endorsement and the Contractors Blanket Endorsement.

For the foregoing reasons, the Court will grant United Fire's motion for partial summary judgment (Doc. 74) on Counts II and III and will deny Roxana's motion for summary judgment (Doc.55) and motion for partial summary judgment (Doc. 77).  United Fire's motion to strike Roxana's motion for partial summary judgment (Doc. 79) is rendered moot by this ruling. Because the Court has determined that neither Roxana nor Allied Waste are additional insureds under the Policy, it is not necessary to consider United Fire's other arguments why the Policy does not cover them for Fowler's lawsuit.  The only claim remaining in the complaint is United Fire's claim for reimbursement of defense costs already paid.  The Court would entertain a motion to allow a further dispositive motion on this issue should a party so request.

## III.    Motion to Dismiss or Stay

Terry and Tad ask the Court to dismiss or stay Roxana's third party action against them pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). They note that Roxana filed a claim for indemnity against them in August 2010 in the *Fowler* action based on the same conduct alleged in this case – Terry and Tad's alleged failure to provide insurance as promised.  That wrongful conduct was alleged in this case for the first time nearly two years later in July 2012.

Roxana urges the Court not to abstain from hearing the third-party complaint, noting that *Colorado River* abstention is only appropriate in exceptional circumstances.  It argues this third-party claim and the *Fowler* counterclaim are not parallel because *Fowler* does not involve United Fire or insurance issues.

12

As a preliminary matter, the Court notes that it has supplemental but not original jurisdiction over the third-party complaint. *See* 28 U.S.C. § 1367(a). Thus, the concerns that ordinarily weigh in favor of the Court's exercise of federal jurisdiction when it can are not present in this case. The Court further believes that the remainder of the claims over which it has original jurisdiction – United Fire's request for reimbursement of defense costs already paid – will be disposed of in relatively short order. At that point, a presumption would arise that the Court should relinquish jurisdiction over supplemental state law claims because the claims over which it had original jurisdiction had been resolved. *See Beck v. Dobrowski*, 559 F.3d 680, 686 (7th Cir. 2009) (citing 28 U.S.C. § 1367(c)(3)). The presumption is strong where, like here, there is a parallel state court action that is closer to resolution than the case in federal court. *Id.* It appears, then, that the real question is whether the Court should dismiss the third-party claims without prejudice now under *Colorado River* or later under 28 U.S.C. § 1367(c)(3). In light of the circumstances, dismissal now under *Colorado River* abstention is appropriate.

*Colorado River* noted the general rule that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction," and "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817 (internal quotations omitted). It concluded,

> Abstention from the exercise of federal jurisdiction is the exception, not the rule. The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest.

*Id*. at 813 (internal quotations omitted).

To determine whether a stay under *Colorado River* is appropriate, the Court first must

13

decide whether the federal and state actions are parallel, that is, "whether substantially the same parties are contemporaneously litigating substantially the same issues in another forum," and whether "there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 646 (7th Cir. 2011) (internal quotations omitted).  If there is doubt about whether actions are parallel, the Court should not abstain under *Colorado River*.  *Id.*

If the actions are parallel, the Court must then consider a host of factors to determine if "exceptional circumstances" exist to justify *Colorado River* abstention:

> (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim.

*Id.* at 647-48 (internal quotations omitted).  No single factor is determinative, and because of the presumption against abstention, neutral factors weigh against it.  *Id.* at 648.

The third-party claim in this case is parallel to the counterclaim in the *Fowler* action. They both involved the same parties – Roxana, Terry and Tad.  The absence of United Fire and insurance issues from the *Fowler* action is irrelevant because the Court compares only the counterclaim and the third-party claim, not the entire lawsuit.  United Fire is not a party in either of the relevant claims.

The actions also involve substantially the same issue – Terry and Tad's liability for allegedly failing to provide insurance coverage for Roxana.  That they may rely on slightly different legal theories is of no moment.  Resolution of the counterclaim in the *Fowler* action

14

would resolve the third-party claims in this action.  The actions are therefore parallel.

"Exceptional circumstances" exist to justify abstention.  As noted above, the Court's interest in litigating the third-party claim in this case is diminished because it has only supplemental jurisdiction over that claim, and it is likely to decline that jurisdiction in the near future.  Furthermore, a state court forum in Madison County, where the property at issue in the cases is located, is likely to be more convenient than Benton, Illinois, nearly 100 miles away. The Madison County court exercised jurisdiction over the relevant claim two years before this Court did and is likely to achieve a final resolution more quickly than this Court could.  The relevant law is entirely state law, and a state court is adequate to protect the respective parties' rights.  Finally, expending the parties' and the federal court's resources any longer than necessary on a claim that, in the Court's opinion, is likely to be dismissed without prejudice anyway is a waste of resources.  For these reasons, the Court finds abstention under *Colorado River* is appropriate and will therefore grant Terry and Tad's motion to dismiss (Doc. 93).

### IV.   Conclusion

For the foregoing reasons, the Court:

•   **DENIES** Roxana's motion for summary judgment (Doc. 55);

•   **GRANTS** United Fire's motion for partial summary judgment (Doc. 74) on Count I in its entirety and on Counts II and III in all aspects except to the extent they seek recovery of defense costs already paid;

•   **DECLARES** as follows:

> CGL Insurance Policy No. 60057489 issued by plaintiff United Fire & Casualty Company to defendant Thiems Construction Company, Inc. does not afford coverage to defendant Roxana Landfill Inc. or to defendant Allied Waste Transportation, Inc. for the events that serve as the basis for the claims brought in *Fowler v. Thiems*, No. 09-L-922, filed in the Circuit Court for the Third Judicial Circuit, Madison County, Illinois; and

15

> Plaintiff United Fire & Casualty Company owes no duty to defend or to indemnify defendant Roxana Landfill Inc. or defendant Allied Waste Transportation, Inc. against any of the claims brought in *Fowler v. Thiems*, No. 09-L-922, filed in the Circuit Court for the Third Judicial Circuit, Madison County, Illinois.

- **DENIES** Roxana's motion for partial summary judgment (Docs. 77 & 78);

- **DENIES as moot** United Fire's motion to strike Roxana's motion for partial summary judgment (Doc. 79);

- **GRANTS** Terry and Tad's motion to dismiss or, in the alternative, to stay (Doc. 93);

- **DISMISSES without prejudice** the third-party claim in this case; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**
**DATED:  December 7, 2012**

s/ J. Phil Gilbert_____
**J. PHIL GILBERT**
**DISTRICT JUDGE**

16